**TABB LAKES, LTD., a Virginia corporation, Plaintiff,**

v.

**UNITED STATES of America; Lee M. Thomas, Administrator, United States Environmental Protection Agency, Region III; Honorable John O. Marsh, Jr., Secretary of the Army; Lt. General E. R. Heiberg, III, Chief, Army Corps of Engineers: Brigadier General Charles E. Williams, North Atlantic Division Engineer; Col. J.J. Thomas, Norfolk District Engineer, U.S. Army Corps of Engineers, Defendants.**

Civ. A. No. 87–635–N.

United States District Court,
E.D. Virginia,
Norfolk Division.

Nov. 7, 1988.

Richard R. Nageotte, Douglas R. Hansen, Nageotte and Borinsky, P.C., Woodbridge, Va., for plaintiff.

Michael D. Rowe, U.S. Dept. of Justice, Land and Natural Resources Div., Environmental Defense Section, Washington, D.C., Cynthia R. Martin, Atty. Advisor, U.S. Army Corps of Engineers, Norfolk, Va., Bruce E. Byrd, Asst. Regional Counsel, U.S. Environmental Protection Agency, Region III, Philadelphia, Pa., John F. Kane, Asst. U.S. Atty., Walter E. Hoffman, Norfolk, Va., for defendants.

## MEMORANDUM OPINION

MacKENZIE, Senior District Judge.

This matter is before the Court on the plaintiff's and defendants' cross Motions for Summary Judgment. The issue is whether the Army Corps of Engineers (Corps) has jurisdiction to require a permit in this case.

---

Originally plaintiff, Tabb Lakes, Ltd. (Tabb Lakes), sought a permit under section 404 of the Clean Water Act (CWA), in October, 1986, requesting permission to fill portions of its property for development purposes. 33 U.S.C. § 1344. While a decision was pending, Tabb Lakes withdrew its permit application in August 1987 on grounds that it had determined that the property in question was not subject to the Corps' jurisdiction. After Tabb Lakes had commenced this declaratory judgment action, the Corps, in July, 1988, completed its Quantitative Wetlands Jurisdictional Determination which it alleges is the basis for the Corps' asserted jurisdiction over Tabb Lakes' property.

---

Tabb Lakes filed this complaint on September 21, 1987 seeking a declaratory judgment that its property did not fall within the jurisdictional parameters of section 404 of the CWA. In January 1988 the United States filed its Motion to Dismiss or for Partial Summary Judgment and in March and May 1988 Tabb Lakes filed its own Motion to Dismiss and for Summary Judgment (Amended).

In its Motion for Summary Judgment, Tabb Lakes challenges, among other things, the failure of the Corps to comply with proper notice and comment procedures under the Administrative Procedures Act (APA) before it issued a memorandum, in effect, rule making, which was subsequently the basis for making the jurisdictional determination in this case, claiming that Corps' jurisdiction stems from the regulations implementing section 404 of the CWA. 33 C.F.R. §§ 320, *et seq.*

The specific regulations set out at 33 C.F.R. § 328.3(a)(3) provide the definition of waters subject to Corps regulation:

"For the purpose of this regulation these terms are defined as follows:

(a) The term 'waters of the United States' means

(1) [N/A]

(2) [N/A]

(3) All other waters such as intrastate lakes, rivers, streams (including intermittent streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds, the use, degradation or destruction of which could affect interstate or foreign commerce including any such waters;

(i) Which are or could be used by interstate or foreign travelers for recreational or other purposes; or

(ii) From which fish or shellfish are or could be taken and sold in interstate or foreign commerce; or

(iii) Which are used or could be used for industrial purpose[s] by industries in interstate commerce; ..."

On November 8, 1985, Brigadier General Patrick J. Kelly, the Deputy Director of Civil Works for the U.S. Army Corps of Engineers in Washington, D.C., issued a memorandum to all district Corps offices listing the seven [7] standards which would indicate a sufficient interstate commerce connection to warrant exercise of jurisdiction by the Corps over isolated waters and wetlands. Specifically, number 5 is the indicator relied on by the Corps in this case and it reads, "Waters which are used or could be used as habitat by other migratory birds which cross state lines."

*Before* a rule is promulgated or amended, section 553 of the APA requires agencies to afford notice of such impending action and to provide an opportunity for public comment. However, an exemption applies:

> "(A) to interpretative rules, general statements of policy, or rules of agency organization, or procedure, or practice; ..." 5 U.S.C. § 553(b)(3)(A).

The threshold issue here is whether Brigadier General Kelly's November 8, 1985 Memorandum falls within this exception, which exception, according to *Batterton v. Marshall*, 648 F.2d 694, 703 (D.C.Cir.1980), is a "narrow one" and to be "only reluctantly countenanced." The United States urges that these are merely interpretive rule changes, or at most policy statements.

The APA's § 553 notice and comment provisions seek to insure public participation and fairness to affected parties where agencies hold governmental authority, and to provide for an input of all relevant facts and alternatives. *American Hospital Association v. Bowen*, 640 F.Supp. 453 (D.D.C.1986), *rev'd*, 834 F.2d 1037, 1044 (D.C.Cir.1987). Although the distinction between a substantive and interpretive rule is a gray area, the Courts generally differentiate cases "in which an agency is merely explicating Congress' desires from those cases in which the agency is adding substantive content of its own." *Id.* at 1045.

"Substantive rules are ones which grant rights, impose obligations, or produce other significant effects on public interests, or which effect a change in existing law or policy. *Id.* Interpretive rules, by contrast, are those which merely clarify or explain existing law or regulations, are essentially ... instructional, and do not have the full force and effect of a substantive rule but are in the form of an explanation of particular terms." *Id.* The task is very fact specific, however the Court in *American Hospital Association*, 834 F.2d at 1046, noted that a typical example of a substantive rule was a parole board's use of guidelines that established factors for determining parole eligibility and were thus critical to the ultimate parole decision. *Id.* (citing *Pickus v. United States Board of Parole*, 507 F.2d 1107, 1112–13 (D.C.Cir.1974)).

Beyond any doubt, the memorandum produced a "significant effect on public interests" in a 38 acre tract at Tabb Lakes, most of which is a wetland, but not water, and which is brought into Corps jurisdiction as "water which is used or could be used as habitat by other migratory birds which cross state lines." Incidentally, not ducks or geese, but woodpeckers, songbirds, etc. In this case it is clear that Brigadier General Kelly's Memorandum affected a change in Corps policy intended to have the full force and effect of a substantive rule, and that the Corps relied on the memorandum in reaching its jurisdiction determination. Deposition of W. H. Poore, Jr., pp. 50–51; Memorandum of Brigadier General Patrick J. Kelly, November 8, 1985. Additionally, on February 11, 1986 General Kelly issued a second memorandum in which he noted that his November 8, 1985 memorandum "clarified for the first time the factors which are indicative of a connection to interstate commerce for purposes of the CWA." Kelly Memorandum, February 11, 1986. He further noted that "... you should notify your districts that, effective immediately, all waterbodies which are or reasonably could be used by migratory birds are waters of the United States and should be regulated as such for all *ongoing* and future discharges of dredged or fill material." *Id.* General Kelly implies in that memorandum that he disagreed with the Corps' Galveston District Office determination denying jurisdic-

tion in the Pond 12 case and that the District should have asserted jurisdiction if it followed his 1985 Memorandum. *Id.; see National Wildlife Federation v. Laubscher,* 662 F.Supp. 548 (S.D.Tex.1987).

Accordingly, we find that General Kelly's November 8, 1985 far-reaching Memorandum did not fall within any exceptions but instead required appropriate notice and comment under the APA.

The United States also asserts that, at most, the Kelly Memorandum is a general statement of policy expressly exempted from the informal rulemaking requirements of the APA. This Court first notes that while a substantive rule establishes a standard of conduct which has the force of law in subsequent proceedings, "a general statement of policy, on the other hand, does not establish a binding norm. It is not finally determinative of the uses or rights to which it is addressed. The agency cannot apply or rely upon a general statement of policy as law because a general statement of policy only announces what the agency seeks to establish as policy." *American Hospital Association,* 834 F.2d at 1046 (citing *Pacific Gas and Electric Co. v. Federal Power Commission,* 506 F.2d 33, 38 (D.C.Cir.1974)). In distinguishing between legislative rules and policy statements some Courts have followed the test set out in *American Bus Association v. United States,* 627 F.2d 525, 529 (D.C. Cir.1980).

> "First, courts have said that, unless a pronouncement acts prospectively, it is a binding norm. Thus, a statement of policy may not have a present effect.
> The second criterion is whether a purported policy statement genuinely leaves the agency and its decisionmakers free to exercise discretion."

Again, the Corps intended the November 8, 1985 Kelly Memorandum binding and intended that it take effect immediately. The subsequent February 11, 1986 Kelly Memorandum clearly indicates that the Corps did not intend to leave its district personnel with discretion in this area.

Accordingly, the November 8, 1985 Kelly Memorandum was not excepted from notice and comment requirements under the APA as a policy statement.

The Kelly Memorandum does not fall within any of the exceptions to § 553 of the APA. This Court must, therefore, set aside any agency action found to be without observance of procedure required by law. 5 U.S.C. § 706(2)(D); *Natural Resources Defense Council, Inc. v. U.S. Environmental Protention Agency,* 683 F.2d 752 (3rd Cir.1982); *Brown Express, Inc. v. United States,* 607 F.2d 695, 703 (5th Cir. 1979).

Although this Court has grave doubts that a property now so used, or seen as an expectant habitat for some migratory birds, can be declared to be such a nexus to interstate commerce as to warrant Army Corps of Engineers jurisdiction, we do not here decide that issue. Further, it is unnecessary for the Court to make a decision as to Counts II, III and IV.

Determining that the Army Corps of Engineers does not have jurisdiction in this particular case, we enter judgment for the plaintiff. Each side shall bear its own costs and attorneys fees.

An Order will be entered contemporaneously herewith declaring that the Army Corps of Engineers does not have jurisdiction in this particular case.