**TABB LAKES, LTD., Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–Appellee.**

**No. 93–5029.**

United States Court of Appeals, Federal Circuit.

Nov. 24, 1993.

Richard R. Nageotte, Nageotte & Krein, Stafford, VA, argued for plaintiff-appellant.

David C. Shilton, Atty., Dept. of Justice, Washington, DC, argued for defendant-appellee. With him on the brief were Myles E. Flint, Acting Asst. Atty. Gen., Environment & Nat. Res. Div., Dirk D. Snel and Dorothy R. Burakreis, Attys.

Before NIES, Chief Judge, SMITH, Senior Circuit Judge, and MICHEL, Circuit Judge.

NIES, Chief Judge.

Tabb Lakes, Ltd., appeals the judgment of the United States Court of Federal Claims dismissing its claim for compensation under the Fifth Amendment for an alleged taking of its property. The court held that the action of the U.S. Army Corps of Engineers which delayed residential development of Tabb Lakes' land containing wetlands did not constitute a regulatory taking of its property for the alleged period of delay. *Tabb Lakes, Inc. v. United States,* 26 Cl.Ct. 1334, 1357 (Cl.Ct.1992). We affirm.

---

**1.** Section 326.3(c)(1) of Title 33 of the Code of Federal Regulations states: "If the violation involves a project that is not complete, the district engineer's notification should be in the form of a cease and desist order prohibiting further work pending resolution of the violation in accordance with the procedures contained in this part."

I.

## BACKGROUND

Tabb Lakes, Ltd., purchased 167 acres of land in York County, Virginia, on April 6, 1984, intending to develop all of the property as a residential subdivision. The preliminary subdivision plat, which divided the property in five sections, was approved by the county the next month. After final plats for sections 1 and 2 were approved, the company began construction, substantially selling out all lots in those sections over the next two years. When it then turned to developing sections 3, 4, and 5, an anonymous caller informed the U.S. Army Corps of Engineers, Norfolk District, that the Tabb Lakes property contained wetlands. Immediately, R.H. Jones, a Corps Environmental Scientist, made an on-site inspection and concluded that sections 3, 4, and 5 contained wetlands subject to Corps control under the Clean Water Act, 33 U.S.C. §§ 1251–1387 (1988) ("the CWA"). On October 8, 1986, the Corps ordered Tabb Lakes to cease and desist from further filling of any wetlands until it obtained a permit.[1] Tabb Lakes was further advised that failure to submit a permit application under section 404 of the CWA for any additional filling could result in civil or criminal penalties. Approximately 38 acres in sections 3, 4, and 5 of Tabb Lakes contained wetlands.

On October 10, 1986, Tabb Lakes submitted a permit application. For the next ten months, the parties engaged in negotiations directed to agreement on a plan to mitigate damage to the wetlands which would lead to issuance of a permit. Not having reached agreement, Tabb Lakes withdrew its permit application and filed a declaratory judgment action seeking a declaration that its property was not subject to the Corps' regulatory authority under section 404 of the CWA. *See Tabb Lakes Ltd. v. United States,* 715 F.Supp. 726, 727 (E.D.Va.1988), *aff'd,* 885 F.2d 866 (4th Cir.1989). Under CWA, the

It is unclear whether the Corps' order here was in writing or merely verbal. The parties do not disagree as to its substance, but no written order appears in the record.

Corps does not have regulatory jurisdiction over all wetlands but only over "waters of the United States." *See* 33 U.S.C. §§ 1344(a), 1362(7); 33 C.F.R. § 328.3(a)(3). Such "waters" require a nexus with interstate or foreign commerce. 33 C.F.R. § 328.3(a)(3)

On November 7, 1988, the district court held that the action by the Corps in asserting its jurisdiction over Tabb Lakes' property was procedurally defective under section 3 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553 (1988). *Tabb Lakes,* 715 F.Supp. at 728–29. The assertion of jurisdiction by the Corps had been based on a memorandum of the Corps Deputy Director of Civil Works stating that use of isolated wetlands, such as those at Tabb Lakes, by migratory birds could support a nexus with interstate commerce. The court held that this type of ruling had to comply with the notice and comment provisions of APA which had not been followed by the Corps. *Id.* at 729. Thus, the Corps had not acquired jurisdiction over Tabb Lakes' property. *Id.* Upon affirmance by the Court of Appeals for the Fourth Circuit, the judgment became final on December 19, 1989.

Following the litigation, Tabb Lakes proceeded to fill the wetlands and develop all of its property as originally planned. The Corps never attempted thereafter to take steps to secure jurisdiction over Tabb Lakes property or interfere in its filling wetlands for residential lots or roads. All lots in the subdivision were sold.

On November 2, 1990, Tabb Lakes filed a complaint in the Court of Federal Claims, seeking to recover just compensation for the alleged "temporary" taking of its property in which wetlands were located, namely, sections 3, 4, and 5. The period of the taking was alleged to run from October 8, 1986, the date on which the Corps issued its Cease and Desist Order, to December 19, 1989, the date on which the judgment of the United States Court of Appeals for the Fourth Circuit became final.

The Court of Federal Claims ruled, on cross motions for summary judgment, that no "temporary" regulatory taking of Tabb Lakes' property occurred. The court rejected plaintiff's argument that it had been de-

prived of all, or substantially all, economically viable use of its property during the alleged period of the taking on the grounds that there was some continued development and sales activity over the three years and that the government-caused delay in pursuing the permit process was not extraordinary or in bad faith. The court also rejected plaintiff's argument that the delay was inherently unreasonable because the Corps did not have jurisdiction over the property. Accordingly, the court denied plaintiff's motion for summary judgment and granted that of the government.

## II.

### ISSUE

The sole issue is whether the Corps effected a taking of Tabb Lakes' property on October 8, 1986, by issuing an order to the company to cease and desist from filling wetlands without a permit.

## III.

### STANDARD OF REVIEW

The entry of summary judgment by the Court of Federal Claims is "a question of law subject to complete and independent review" by this court. *Trayco, Inc. v. United States,* 994 F.2d 832, 835 (Fed.Cir.1993). *See also Turner v. United States,* 901 F.2d 1093, 1095 (Fed.Cir.1990). Thus, the court reviews the record below "essentially ... for itself" to determine whether any genuine issue of material fact exists, and if not, whether the movant is entitled to judgment as a matter of law. *Avia Group Int'l, Inc. v. L.A. Gear Cal. Inc.,* 853 F.2d 1557, 1561 (Fed.Cir.1988).

## IV.

### THE TAKINGS ISSUES

A. *Takings Limited in Time Require Compensation*

■ There can be no dispute that the taking of private property for public use requires the payment of compensation under

the Constitution.[2] Further, a taking may be effected by inverse condemnation.[3] Finally, once a taking is effected, no subsequent activity of the government extinguishes its obligation to pay for the period of deprivation. As stated in *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 321, 107 S.Ct. 2378, 2389, 96 L.Ed.2d 250 (1987):

> [W]here the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective.

In *First Lutheran*, the county of Los Angeles issued an ordinance prohibiting all construction or reconstruction of buildings on certain land after a devastating flood. The case came to the Court after a motion to strike plaintiff's allegation that it was deprived of all economically viable use of its land by the ordinance was granted, based on the California Supreme Court's decision in *Agins v. City of Tiburon*, 24 Cal.3d 266, 157 Cal.Rptr. 372, 598 P.2d 25 (1979), *aff'd on other grounds*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). The Court, however, assumed that allegation to be true and ruled that such action would constitute a regulatory taking for which compensation must be paid for the period of the deprivation.

### B. *The Corps' Order of October 8, 1986 Did Not Effect A Taking*

■ The predicate for plaintiff's taking claim is the cease and desist order of the Corps issued October 8, 1986, which is the only action asserted to trigger the taking. Plaintiff argues that the trial court erred in looking at events and sales activity after that date in determining that no taking occurred. According to plaintiff, the order deprived plaintiff of all economically viable use of that property on that date, and even a one-day taking requires compensation under the Constitution. The evidence of sales activity and the government action after that date, per Tabb Lakes, relates either to a determination of the quantum of damages during the period of the government's denial of use of its property or to a determination of when the taking ended.

We agree in theory with plaintiff that a taking, even for a day, without compensation is prohibited by the Constitution. However, the question here is, "Was there a taking?" Or more specifically, "Did a taking occur on October 8, 1986?" To answer that question, we must give the same effect to the cease and desist order regardless of whether the order ultimately had a permanent effect or only one limited in time. " '[T]emporary' takings, which as here, deny a landowner all use of his property, are not different in kind from permanent takings, for which the Constitution clearly requires compensation." *First Lutheran*, 482 U.S. at 318, 107 S.Ct. at 2388.

■ Plaintiff is correct that on October 8, 1986, the Corps' cease and desist order effectively stopped its development of its property as it had planned. However, plaintiff is incorrect that this interference or restriction on the use of its land by government regulatory action necessarily constituted a taking. A taking by regulatory action is recognized only if such action goes "too far." *Lucas v. South Carolina Coastal Council*, — U.S. —, —, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798 (1992) (*citing Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922)). That government interference of the type involved here does not go "too far" is supported by the precedent of the Supreme Court. In this case the cease and desist order, while stopping the filling of

**2.** The Fifth Amendment provides: "[N]or shall private property be taken for public use, without just compensation."

**3.** As stated in *Agins v. City of Tiburon*, 447 U.S. 255, 258 n. 2, 100 S.Ct. 2138, 2140 n. 2, 65 L.Ed.2d 106 (1980):

> Inverse condemnation should be distinguished from eminent domain. Eminent domain refers to a legal proceeding in which a government asserts its authority to condemn property. *United States v. Clarke*, 445 U.S. 253, 255–258 [100 S.Ct. 1127, 1129–1131, 63 L.Ed.2d 373] (1980). Inverse condemnation is "a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted." *Id.* at 257, 100 S.Ct. at 1130.

wetlands, specifically left the door open to development by obtaining a permit. That type of regulatory action has been unequivocally held *not* to effect a taking. In *United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 126–127, 106 S.Ct. 455, 458–459, 88 L.Ed.2d 419 (1985), the Supreme Court held:

> [T]he mere assertion of regulatory jurisdiction by a governmental body does not constitute a regulatory taking.... A requirement that a person obtain a permit before engaging in a certain use of his or her property does not itself "take" the property in any sense: after all, the very existence of a permit system implies that permission may be granted, leaving the landowner free to use the property as desired. Moreover, even if the permit is denied, there may be other viable uses available to the owner. Only when a permit is denied and the effect of the denial is to prevent "economically viable" use of the land in question can it be said that a taking has occurred.

Thus, even assuming the plaintiff's ability to sell its property was more limited or even temporarily nonexistent on and after the October 8, 1986, order until the order was invalidated and it was again able to fully develop the property, "[m]ere fluctuations in value during the process of governmental decisionmaking, absent extraordinary delay, are 'incidents of ownership. They cannot be considered a "taking" in the constitutional sense.'" *Agins v. City of Tiburon,* 447 U.S. 255, 263 n. 9, 100 S.Ct. 2138, 2143 n. 9, 65 L.Ed.2d 106 (1980) (quoting *Danforth v. United States,* 308 U.S. 271, 285, 60 S.Ct. 231, 236, 84 L.Ed. 240 (1939)). As reaffirmed in *First Lutheran,* 482 U.S. at 320, 107 S.Ct. at 2389, "depreciation in value of the property by reason of preliminary activity is not chargeable to the government."

■ The holding of *First Lutheran* easily squares with the principle that governmental interference as part of preliminary decisionmaking does not amount to a taking. There was no preliminary negotiation or decisionmaking under the ordinance at issue in *First Lutheran.* On its face all use of certain land was immediately and absolutely barred. Without *preliminary* regulatory activity and no escape hatch of a permit, the regulatory action at least arguably expropriated all use and value of the First Lutheran property. That is not even arguably the situation here.

Plaintiff finds support for its taking arguments in *Hendler v. United States,* 952 F.2d 1364 (Fed.Cir.1991). However, we conclude *Hendler* supports the government's position. In *Hendler,* this court affirmed a ruling that an order of the Environmental Protection Agency directing the plaintiff to allow EPA access to its property in itself did not effect a taking. *Id.* at 1375. However, pursuant to the order EPA actually invaded the plaintiff's land to install wells. This later action in physically intruding on the plaintiff's property was held to constitute a taking. *Id.* at 1377. The Corps' cease and desist order in this case is comparable to the EPA order which *in itself* did not constitute an invasion of property or otherwise a taking.

■ Tabb Lakes points to the testimony of its expert witness as creating an issue of fact which precludes summary judgment. Mr. Rist gave his opinion that there was no viable use of all of the land in sections 3, 4, and 5 on and after October 8, 1986, because no developer would buy all of the land until the cease and desist order was removed. However, Mr. Rist's testimony does not raise a genuine issue of material fact. As a matter of law, the possibility of a permit precludes the order itself from constituting a taking. *Riverside Bayview,* 474 U.S. at 127, 106 S.Ct. at 459. Plaintiff was not precluded from development; it was precluded from development without a permit.

Thus, while the Constitution requires the payment of compensation for a taking for the period of time that a property has no economic value by reason of government regulation, *First Lutheran,* 482 U.S. at 321, 107 S.Ct. at 2389, the case law does not support plaintiff's view that a taking occurred on October 8, 1986, by reason of the Corps' demand that plaintiff obtain a permit before filling more wetlands. The testimony of a witness cannot change the law, as articulated by the Supreme Court, that the initiation of permit proceedings does not constitute a taking. As stated in *Pennsylvania Coal Co. v.*

*Mahon,* 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922), "Government could hardly go on if to some extent values incident to property could not be diminished without paying for every such change in the general law." *Id.* at 413, 43 S.Ct. at 159.

■ Moreover, the Claims Court interpreted Mr. Rist as saying only that no one would buy each and every lot in each and every section, which is not the standard for determining economically viable use of the "property." While in some cases it may be difficult to determine whether all economic viable use of the "property" has been destroyed, that is not a serious problem here. Clearly, the quantum of land to be considered is not each *individual* lot containing wetlands or even the combined area of wetlands. If that were true, the Corps' protection of wetlands via a permit system would, *ipso facto,* constitute a taking in every case where it exercises its statutory authority. *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 130–31, 98 S.Ct. 2646, 2662, 57 L.Ed.2d 631 (1978), negates that view:

> Taking jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole—here, the city tax block designated as the "landmark site."

The Supreme Court further explained the "parcel as a whole" analysis in *Concrete Pipe & Prods. Inc. v. Construction Laborers Pension Trust,* — U.S. —, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993):

> [W]e rejected this analysis years ago in *Penn Central Transportation Co. v. New York City,* . . ., where we held that claimant's parcel of property could not first be divided into what was taken and what was left for the purpose of demonstrating the taking of the former to be complete and hence compensable. To the extent that any portion of property is taken, that portion is always taken in its entirety; the

relevant question, however, is whether the property taken is all, or only a portion of the parcel in question.

*Id.* — U.S. at —, 113 S.Ct. at 2290. Moreover, the Supreme Court in *Penn Central* unequivocally again rejected the proposition "that diminution in property value standing alone can establish a 'taking.'" *Penn Central,* 438 U.S. at 131, 98 S.Ct. at 2663.

Plaintiff concedes that if we consider all five sections of the subdivision as "the property" (which the government argues is the relevant area), there is no taking. It maintains that looking to sections 3, 4, and 5, however, leads to the contrary conclusion. We agree with the Claims Court that this dispute need not be resolved. Even if only sections 3, 4, and 5 are considered, the permit system brings the facts of this case within the ambit of the holdings that preliminary regulatory activity does not effect a taking in the constitutional sense.

## C. The Lack of Jurisdiction Decision

■ The holdings in the above cases would be entirely on point but for the added factor here that, in the view of the Fourth Circuit, the Corps improperly invoked its jurisdiction in this case. Plaintiff argues that such impropriety makes the permit cases inapplicable because the company never should have been subjected to the permit process. In an exchange with the bench at oral argument, plaintiff agreed that its taking claim depended on the validity of the government action. This is because a "Tucker Act suit does not lie for an executive taking not authorized by Congress, expressly or by implication." *NBH Land Co. v. United States,* 576 F.2d 317, 319, 217 Ct.Cl. 41 (1978); *See Southern Cal. Fin. Corp. v. United States,* 634 F.2d 521, 523, 225 Ct.Cl. 104 (1980), *cert. denied,* 451 U.S. 937, 101 S.Ct. 2016, 68 L.Ed.2d 324 (1981) ("[B]efore a compensable taking can be found by the court, there must be some congressional authorization, express or implied, for the particular taking claimed."). Thus, claimant must concede the validity of the government action which is the basis of the taking claim to bring suit under the Tucker Act, 28 U.S.C. § 1491. *See Florida Rock Indus., Inc. v. United States,* 791

F.2d 893, 899 (Fed.Cir.1986), *cert. denied,* 479 U.S. 1053, 107 S.Ct. 926, 93 L.Ed.2d 978 (1987) (to assert a takings claim, the government must have had the authority to regulate the proposed mining activity); *Deltona Corp. v. United States,* 657 F.2d 1184, 228 Ct.Cl. 476 (1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982) (the validity of the permit denial is not an issue in a takings case under the Tucker Act).

If "the taking is unauthorized, the acts of defendant's officers may be enjoinable, but they do not constitute taking effective to vest some kind of title in the government and entitlement to just compensation in the owner or former owner." *Armijo v. United States,* 663 F.2d 90, 95, 229 Ct.Cl. 34 (1981). Such an analysis ensures that the Tucker Act does not strip from Congress "all control over the obligation of public funds by land takings without condemnation." *NBH Land Co.,* 576 F.2d at 319.

 In any event, the Corps does not accede to the view of the Fourth Circuit and does not raise the defense of an unauthorized taking. *See Florida Rock,* 791 F.2d at 899. Further, its assertion of jurisdiction respecting the wetlands was, *prima facie,* within its authority and cannot be considered *ultra vires.*[4] Accordingly, we reject Tabb Lakes' theory that compensation for a taking must be paid where a mistake is made in the Corps' permit process.[5] A mistake may give rise to a due process claim, not a taking claim. *Cf. Russo Dev. Corp. v. Thomas,* 735 F.Supp. 631, 636 (D.N.J.1989). However, the due process clause of the Constitution is not a money-mandating provision. *See Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed. Cir.1989) (the due process clause "*standing alone,* cannot be ... interpreted to command the payment of money").

D. *Unreasonable Delay in Permit Process*

 Tabb Lakes argues that, even if subjecting it to the permit process is not categorically a taking, the government-caused delay became unreasonable, particularly in impeding development of its upland lots in sections 3, 4, or 5. Thus, in plaintiff's view, subsequent acts somehow convert the original act on October 8, 1986, that is, the issuance of the order, into a taking. Again, we cannot agree. *Danforth* and *Agins* hold that the government is not responsible for diminution in value caused by preliminary activity. *Agins,* 447 U.S. at 263 n. 9, 100 S.Ct. at 2143 n. 9 (*citing Danforth,* 308 U.S. 271, 285, 60 S.Ct. 231, 236, 84 L.Ed. 240 (1939)). While *Danforth* and *Agins* leave open the possibility that a taking may occur by reason of "extraordinary delay" in governmental decisionmaking, nothing in case law suggests that unreasonable delay converts the first preliminary act into the date of the taking. To the contrary, *First Lutheran* interprets *Danforth* (and *Agins* ) to stand for the proposition "that the valuation of property must be calculated as of the time of the taking." 482 U.S. at 320, 107 S.Ct. at 2388. Thus, only after the delay becomes unreasonable would a taking *begin,* albeit such date may occur before the challenged regulation or regulatory action "has ultimately been held invalid." *Id.* Compensation is always measured from the time the taking occurs. Because the order of October 8, 1986, did not effect a taking when issued, subsequent acts do not change its nontaking character. Further, Tabb Lakes has never suggested a later date or event as marking the *start* of a taking. Thus, we need not decide whether at some point after the initial Corps action the delay became unreasonable and, as suggested in *First Lutheran,* gave rise to a taking claim for the period thereafter until the regulatory action was invalidated.

---

4. In a decision of the Ninth Circuit, the Corps was upheld in its substantive position that jurisdiction could rest on the basis that the waters may provide a habitat to migratory birds. *Leslie Salt Co. v. United States,* 896 F.2d 354 (9th Cir. 1990), *cert. denied,* 498 U.S. 1126, 111 S.Ct. 1089, 112 L.Ed.2d 1194 (1991).

5. We have considered and reject Tabb Lakes' argument respecting the lack of authority in Mr. Jones to make the decision on jurisdiction for the same reason. In any event this error was corrected before the decision in the Fourth Circuit and is not mentioned therein as a reason for voiding the cease and desist order. Again, the legality of his action must be conceded for purposes of the taking claim.

## V.

### AMENDMENT OF PLEADINGS

 Finally, Tabb Lakes asserts error in the trial court's refusal to allow it to amend its complaint to change the termination date of the taking from October 1989 to July 1988. The trial court found this would be an exercise in futility. We agree. A shortening of the alleged time period of the taking by changing its termination date could not establish a right to compensation when no taking period ever commenced.

## VI.

### CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court.

**AFFIRMED.**