NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JAMES W. TINDALL,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2024-1143

---

Appeal from the United States Court of Federal Claims in No. 1:23-cv-00757-DAT, Judge David A. Tapp.

---

Decided:  March 6, 2024

---

JAMES TINDALL, Marietta, GA, pro se.

BRYAN MICHAEL BYRD, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee.  Also represented by BRIAN M. BOYNTON, ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY.

---

Before REYNA, MAYER, and CUNNINGHAM, *Circuit Judges.*

PER CURIAM.

James W. Tindall appeals pro se a decision of the United States Court of Federal Claims that dismissed his complaint for lack of jurisdiction and for failure to state a claim. We affirm.

## BACKGROUND

Mr. Tindall owns 2,400 shares of stock in the Public Joint Stock Company Sberbank of Russia ("Sberbank"). S.Appx11.[1] In 2021, President Biden signed Executive Order No. 14,024 ("EO 14024"). Fed. Reg. 20249 (Apr. 15, 2021). The United States Office of Foreign Assets ("OFAC"), pursuant to EO 14024, issued sanctions prohibiting any securities transactions involving specified Russian financial institutions, including Sberbank. S.Appx21. On April 26, 2022, Charles Schwab & Co., Inc., Mr. Tindall's brokerage firm, notified him of the impending actions on his shares of Sberbank and, on May 25, 2022, placed his shares into an OFAC-controlled escrow account. S.Appx34.

During April and May of 2022, Mr. Tindall sent letters to various federal officials. *See, e.g.*, S.Appx26–31. In these letters, Mr. Tindall offered to sell his shares and, alternatively, offered contract terms for use of his shares. *Id.* The letters also included requested deadlines for response. *Id.* The government did not respond. S.Appx50.

On May 22, 2023, Mr. Tindall filed a complaint before the United States Court of Federal Claims ("CFC"). S.Appx11. Mr. Tindall alleged that the government had (1) violated his due process rights under the Fifth Amendment; (2) breached an alleged contract with Mr. Tindall for use of his shares; and (3) unconstitutionally taken his shares. S.Appx18–19. The government moved to dismiss for lack of jurisdiction and for failure to state a claim. S.Appx45.

---

[1] "S.Appx" refers to the supplemental appendix accompanying the government's responding brief.

The CFC granted the government's motion. S.Appx1. The CFC found a lack of jurisdiction over Mr. Tindall's Due Process claim because "[the] Due Process Clause of the Fifth Amendment does not mandate payment of money." S.Appx4. Regarding breach of contract, the CFC determined Mr. Tindall had failed to state a claim because a contract was never formed. S.Appx5. The CFC also held Mr. Tindall failed to state a takings claim because he had not conceded the lawfulness of the government's actions and, even if he had, the government's actions were in the interest of national security and thus exempt from such allegations. S.Appx5–6. In support, the CFC relied on *Paradissiotis v. United States*, 304 F.3d 1271, 1275 (Fed. Cir. 2002), which explains that "freez[ing] assets" as a part of "valid regulatory measures taken to serve substantial national security interests" does not constitute a compensable taking. S.Appx6.

Mr. Tindall appeals. This Court has jurisdiction under 28 U.S.C. § 1295(a)(3).

## STANDARD OF REVIEW

This court reviews de novo the CFC's grant of a motion to dismiss for lack of jurisdiction. *Inter-Tribal Council of Arizona Inc. v, United States*, 956 F.3d 1328, 1338 (Fed. Cir. 2020). We also review de novo grants of motions to dismiss for failure to state a claim. *Id.* We accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Id.*

## DISCUSSION

For the reasons discussed below, we affirm the CFC's order dismissing Mr. Tindall's due process claim for lack of jurisdiction, and his breach of contract and takings claims for failure to state a claim.

We first address whether the CFC has jurisdiction over Mr. Tindall's claim under the Due Process clause of the Fifth Amendment. The Tucker Act, 28 U.S.C. § 1491, provides the CFC with jurisdiction over claims against the

federal government for money damages, but it does not itself create a substantive cause of action against the United States. *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983) (quoting *United States v. Testan*, 424 U.S. 392, 398 (1976)). Instead, to come within the jurisdictional reach and waiver of sovereign immunity provided under the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1306 (Fed. Cir. 2008) (quoting *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc)).

Here, Mr. Tindall claims money damages for alleged violations of his due process rights under the Fifth Amendment. *See* Appellant Informal Br. 9. Mr. Tindall's complaint identifies 28 U.S.C. § 1491(a)(1) as the basis for jurisdiction, but Mr. Tindall's complaint fails to point to a separate source of substantive law that would create a cause of action against the government. S.Appx11–12. The Due Process clause of the Fifth Amendment does not mandate the payment of money and thus does not, by itself, satisfy the jurisdictional requirements of the CFC. *See LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995). For these reasons, the CFC lacks jurisdiction over Mr. Tindall's due process claim.

We next look at Mr. Tindall's breach of contract claim. The elements of a binding contract with the government are mutuality of intent between the parties, consideration, unambiguous offer and acceptance, and authority on the part of a government official to bind the United States. *See Biltmore Forest Broad. FM, Inc. v. United States*, 555 F.3d 1375, 1380 (Fed. Cir. 2009). As to acceptance, an offeree must demonstrate acceptance *in response to* an offer. *See* RESTATEMENT (SECOND) OF CONTRACTS § 22(1). Here, Mr. Tindall argues that the government accepted his alleged offer through certain "overt acts" including President Biden's issuance of EO 14024, the OFAC sanctions resulting in the transfer of his property to an escrow account, and the use of "[his] property as part of defendant's economic

war against Russia." Appellant Informal Br. 13. But the government's alleged acts *predate* Mr. Tindall's letters. *See* Appellee Informal Br. 14. The government's actions therefore do not constitute acceptance of Mr. Tindall's alleged offer. As a result, Mr. Tindall's breach of contract claim fails.

To the extent Mr. Tindall asserts that the government's actions following his "offer letters" constitute the government's acceptance, we disagree. At most, the government simply remained silent after Mr. Tindall sent his letters. Silence only operates as acceptance in limited circumstances. *See* RESTATEMENT (SECOND) OF CONTRACTS § 69 (1); *see also Ibrahim v. United States*, 799 F. App'x. 865, 868 (Fed. Cir. 2020) (noting that "[c]ontract law does not permit one to send unsolicited letters to the government . . . declaring that failure to respond to the letter constitutes both formation and breach of a contract"). Mr. Tindall has not alleged that the government's silence falls into one of these circumstances and thus has not sufficiently pleaded the government's acceptance here. Without acceptance, there exists no contract, and without an existing contract, there can be no breach. Mr. Tindall therefore fails to present a valid breach of contract claim.

Finally, Mr. Tindall fails to state a takings claim. The Takings Clause of the Fifth Amendment provides "private property [shall not] be taken for public use, without just compensation." U.S. Const. Amend. V. To establish CFC jurisdiction, the "claimant must concede the validity of the government action which is the basis of the taking claim." *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802–03 (Fed. Cir. 1993).

Here, Mr. Tindall argues that the holding of his shares in an escrow account constitutes "an unconstitutional takings violation." Appellant Informal Br. 14. On appeal, Mr. Tindall asserts that the complaint and petition were referring only to the government's failure to pay as unlawful. Appellant Informal Br. 16–17. However, the record shows otherwise. Mr. Tindall's complaint alleges that the

government "illegally took" the shares through "unconstitutional conduct." S.Appx14. Thus, we conclude that Mr. Tindall's complaint does not "concede the validity of the government action" and, absent concession, fails to state a claim. *Tabb Lakes*, 10 F.3d at 802–03.

Even assuming that Mr. Tindall implicitly concedes the lawfulness of the government's actions, his takings claim still fails. Mr. Tindall asserts that *Paradissiotis* is inapplicable and national security interests do not act as exceptions to the Fifth Amendment. *See* Appellant Informal Br. 24, 30. Mr. Tindall, however, does not provide any legal support for why *Paradissiotis* does not govern here. As we explained in that case, "valid regulatory measures taken to serve substantial national security interests . . . have not been recognized as compensable takings." *Paradissiotis*, 304 F.3d at 1275. "[This] principle disposes of any suggestion that the United States could freeze [foreign] assets in this country only of it were prepared to pay the cost of any losses resulting from the freeze." *Id.* We see no error in the CFC's reliance on this case as an additional reason for why Mr. Tindall's takings claim fails at the 12(b)(6) stage.

## CONCLUSION

We have considered Mr. Tindall's remaining arguments and find them unpersuasive. For the foregoing reasons, Mr. Tindall has failed to carry his burden and failed to adequately state a claim. We affirm the CFC's dismissal of Mr. Tindall's complaint.

## **AFFIRMED**

### COSTS

No costs.