228 F.3d 998 (9th Cir. 2000)
 TAHOE-SIERRA PRESERVATION COUNCIL, INC.; RICHARD A. ALLISON; ALPINE INVESTMENT COMPANY, LTD.; AMCO, INC.; JEFFREY B. ANDERSEN; BETH C. ANDERSEN; PETER J. ANDERSEN; JANET I. ANDERSEN; DONALD F. ARCHIBALD; JEAN L. ATHERTON; DAVID E. BAKER; MAXINE A. BAKER; JOHN H. BAKER; PIERINO C. BARENGO, et al., PlaintiffAppellee-Cross-Appellant,
v.
TAHOE REGIONAL PLANNING AGENCY, a separate legal entity created pursuant to an interstate compact between the States of California and Nevada; the voting members of the governing body of the Tahoe Regional Planning Agency including TONY CLARK, CHESTER A. GIBBS, ALEXANDER HAAGEN, III, STAN HANSEN, THOMAS HSIEH, JAMES KING, ROBERT PRUETT, JAMES S. REED, LARRY SEVINSON, THOMAS STEWART, WILLIAM D. SWACKHAMER, PEGGY TWEDT, RONALD D. WESTERGARD and NORMAN C. WOODS; STATE OF CALIFORNIA; STATE OF NEVADA, Defendant-Appellant-Cross-Appellee.
 Nos. 99-15641, 99-15771.
 United States Court of Appeals for the Ninth Circuit
 Filed October 20, 2000
 
 D.C. No. CV-84-00257-ECR
 Before: Henry A. Politz,* Stephen Reinhardt, and Michael Daly Hawkins, Circuit Judges.
 
 Prior Report: 216 F.3d 764
 ORDER
 
 1
 Judges Politz, Reinhardt, and Hawkins voted to deny the petition for rehearing. Judges Reinhardt and Hawkins voted to deny the petition for rehearing en banc and Judge Politz recommended denial of the petition for rehearing en banc.
 
 
 2
 A judge of the court called for a vote on the petition for rehearing en banc. A vote was taken, and a majority of the active judges of the court failed to vote for en banc rehearing. Fed. R. App. P. 35(f).
 
 
 3
 The petition for rehearing and the petition for rehearing en banc are denied.
 
 
 4
 KOZINSKI , Circuit Judge, with whom Circuit Judges O'SCANNLAIN, TROTT, T.G. NELSON and KLEINFELD join, dissenting from the order denying the petition for rehearing en banc:
 
 
 5
 The panel does not like the Supreme Court's Takings Clause jurisprudence very much, so it reverses First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304 (1987), and adopts Justice Stevens's First English dissent. Because we are not free to rewrite Supreme Court precedent, I urged our court to take this case en banc. By voting not to rehear, we have neglected our duty and passed the burden of correcting our mistake on to a higher authority.
 
 
 6
 1. For almost twenty years, Lake Tahoe property owners have battled the Tahoe Regional Planning Agency (TRPA), which has blocked the owners' efforts to build homes on their land. The primary issue on this appeal, the fourth in this interminable case, is a temporary moratorium that required owners to leave their land idle for almost three years. The moratorium is only one of a series of restrictions and regulations that have prevented the plaintiffs--largely families who purchased lots in the 1970s hoping to build vacation or retirement homes-from making any use whatsoever of their property. After a bench trial, the district court found that the regulation deprived the owners of the use of their property for three years, and so held they were entitled to compensation. The panel does not set aside the lower court's finding. Instead, it reverses the judgment because, in its view, a temporary regulation can never be a regulatory taking.
 
 
 7
 The government may conscript private property for public purposes, but the Fifth Amendment requires that it pay the owner for it. See U.S. Const. amend. V ("nor shall private property be taken for public use, without just compensation"). The requirement of just compensation ensures that the few are not forced to bear the cost of uses that benefit the many. Although a taking is most obvious where the government directly appropriates the property, physical occupation is not necessary. "[W]hile property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." Pennsylvania Coal Co. v. Mahon , 260 U.S. 393, 415 (1922). The Supreme Court has explained time and again that where a regulation deprives the owner of all use and enjoyment of his property, this amounts to a taking and the government must pay. See Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1016 (1992). That's because the "total deprivation of beneficial use is, from the landowner's point of view, the equivalent of a physical appropriation. " Id. at 1017. This compensation requirement also guarantees that the government does not do by regulation what it cannot do through eminent domain--i.e., take private property without paying for it.
 
 
 8
 Of course, most land-use regulations are not takings and do not call for compensation. A regulation effects a taking only where it denies the owner "all economically beneficial or productive use of land." Id. at 1015. Lucas held that a South Carolina agency took two beachfront lots when it promulgated an environmental regulation that prevented the owner from building on his property. The Court concluded that, when the property owner is required "to sacrifice all economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking." Id. at 1019.
 
 
 9
 The only difference between this case and Lucas is that the regulation here had a finite duration. It was originally supposed to expire after two years and then was extended for another eight months. (In fact, its prohibitions continue to this day under subsequent development plans.) So the question is whether there is something special about a finite moratorium that relieves the government from its duty to compensate. The Supreme Court answered that question in First English when it said that " `temporary' takings which, as here, deny a landowner all use of his property, are not different in kind from permanent takings, for which the Constitution clearly requires compensation." 482 U.S. at 318 (emphasis added).
 
 
 10
 First English concerned a temporary development moratorium that Los Angeles enacted in response to a flood in the Angeles National Forest. First English Church challenged the ordinance, which prevented it from rebuilding damaged buildings. The California courts ruled that the regulation could only be a taking if permanent; if, on the other hand, the county decided to rescind the regulation, it ceased to be a taking. The U.S. Supreme Court disagreed, holding that"where the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective." Id. at 321.
 
 
 11
 Justice Stevens dissented from First English because he disagreed with the Court's "conclu[sion] that all ordinances which would constitute takings if allowed to remain in effect permanently, necessarily also constitute takings if they are in effect for only a limited period of time." Id. at 322 (Stevens, J., dissenting). Justice Stevens would have held that a temporary regulation cannot be a taking, even though it deprives the owner of all present uses, because the property retains value based upon its future uses. That reasoning, embraced by no other member of the Supreme Court, is adopted by the panel in this case.
 
 
 12
 While the opinion nowhere cites Justice Stevens's First English dissent, the reasoning--and even the wording--bear an uncanny resemblance. Here's why Justice Stevens disagreed with First English:
 
 
 13
 Regulations are three dimensional; they have depth, width, and length. As for depth, regulations define the extent to which the owner may not use the property in question. With respect to width, regulations define the amount of property encompassed by the restrictions. Finally, and for purposes of this case, essentially, regulations set forth the duration of the restrictions. It is obvious that no one of these elements can be analyzed alone to evaluate the impact of a regulation, and hence to determine whether a taking has occurred. . . . [I]n assessing the economic effect of a regulation, one cannot conduct the inquiry without considering the duration of the restriction. . . . Why should there be a constitutional distinction between a permanent restriction that only reduces the economic value of the property by a fraction-perhaps one-third--and a restriction that merely postpones the development of a property for a fraction of its useful life--presumably far less than a third?
 
 
 14
 Id. at 330, 332 (Stevens, J., dissenting). And here is the key passage of the panel's opinion:
 
 
 15
 Property interests may have many different dimensions. For example, the dimensions of a property interest may include a physical dimension (which describes the size and shape of the property in question), a functional dimension (which describes the extent to which an owner may use or dispose of the property in question), and a temporal dimension (which describes the duration of the property interest) . . . . A planning regulation that prevents the development of a parcel for a temporary period of time is conceptually no different than a land-use restriction that permanently denies all use on a discrete portion of property, or that permanently restricts a type of use across all of the parcel. Each of these three types of regulation will have an impact on the parcel's value . . . . There is no plausible basis on which to distinguish a similar diminution in value that results from a temporary suspension of development.
 
 
 16
 Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency , 216 F.3d 764, 774, 776, 777 (9th Cir. 2000) (citation omitted). Although claiming its opinion is fully consistent with First English, the panel plagiarizes Justice Stevens's dissent.
 
 
 17
 The panel opinion creates a conflict with Tabb Lakes, Ltd. v. United States , 10 F.3d 796 (Fed. Cir. 1993), which followed the majority's reasoning in First English . In so doing, Tabb Lakes recognized that "a taking, even for a day, without compensation is prohibited by the Constitution." Id. at 800. Under the panel's ruling in our case, a taking for a day could never require compensation, because despite the temporary deprivation, the property would retain almost all of its value based upon its expected future uses.
 
 
 18
 2. One problem with the panel's theory, and the theory of Justice Stevens's dissent, is that it views the regulation's effect on a property's value as the taking itself, rather than as a test for whether the government has deprived the owner of the benefits of his property. A regulation is a taking not because it destroys value, but because "total deprivation of beneficial use is, from the landowner's point of view, the equivalent of a physical appropriation." Lucas, 505 U.S. at 1017 (emphasis added). In the case of regulations without a sunset provision, the deprivations of value and use are one and the same because, where the government permanently prevents the owner from putting his property to any beneficial use, no potential buyer would offer a dime for it.[1]
 
 
 19
 But this identity between value and use obviously does not hold true in the case of a temporary taking. The government can deprive the owner of all present use, but the property might still retain value based upon its future uses. I emphasize "might," because so-called temporary moratoria have a habit of living beyond their purported termination dates. In this case, a series of consecutive development moratoria has prevented the landowners from building any homes on their lots for the two decades since the start of this litigation. If a local government can evade its constitutional obligations by describing a regulation as "temporary," we create a sizable loophole to the Takings Clause. Why would a government enact a permanent regulation--and risk incurring an obligation to compensate--when it can enact one moratorium after another, perhaps indefinitely? Under the theory adopted by the panel, it's hard to see when a property owner would ever state a takings claim against such a scheme.[2]
 
 
 20
 Consider also the effect of this theory on non-regulatory takings. Let's say the government decides to use your house as a warehouse for three years. You are locked out and the government has the run of the property for that period. Is there any doubt that you have suffered a taking for which you should be compensated? Of course not. Why should the case be any different if the government simply prohibits you from using your house for three years, but never does get around to using it as a warehouse?
 
 
 21
 Indeed, it's well-established that temporary physical takings require compensation. See, e.g., Kimball Laundry Co. v. United States, 338 U.S. 1 (1949); United States v. Petty Motor Co. , 327 U.S. 372 (1946); United States v. General Motors Corp. , 323 U.S. 373 (1945). The panel opinion dismisses these cases because they involved physical takings, rather than regulatory ones. See Tahoe-Sierra, 216 F.3d at 779 ("The fact that just compensation was required in these cases, however, has no bearing on the question before us."). But First English rejected that distinction and found that these cases provided "substantial guidance" for its holding that all temporary takings, including regulatory ones, required compensation. 482 U.S. at 318. Again, the panel substitutes its own view of takings law for that of the Supreme Court.
 
 
 22
 These are all big problems with the panel's theory. But, of course, the biggest problem is that First English rejected it. First English held that a taking occurs when the government deprives an owner of the use of his property, even temporarily. See 482 U.S. at 318 (" `[T]emporary' takings which, as here, deny a landowner all use of his property, are not different in kind from permanent takings, for which the Constitution clearly requires compensation." (emphasis added)); see also Lucas , 505 U.S. at 1033 (Kennedy, J., concurring) ("It is well established that temporary takings are as protected by the Constitution as are permanent ones."). Nothing in the opinion --or any other[3] --suggests otherwise. By adopting Justice Stevens's dissent, the panel places itself in square conflict with the majority's opinion in First English.
 
 
 23
 Of course, the panel doesn't admit that its opinion aligns itself with Justice Stevens's dissent, so it must pretend First English said nothing relevant to this case. And so the panel does, claiming that First English does not address whether a temporary moratorium is a taking, because it was"not even a case about what constitutes a taking." Tahoe-Sierra, 216 F.3d at 777. It is true that First English did not have to determine whether there was a temporary taking, because it accepted the state court's conclusion that a regulation prohibiting all development was a taking while it was in effect. (The Supreme Court endorsed that result a few years later in Lucas.) But First English did decide that a temporary regulation is "not different in kind" from a permanent one: If either deprives the owner of all use of his property, then the owner is entitled to compensation for the taking. First English, 482 U.S. at 318. The panel does not deny that the moratorium here, like the regulation in Lucas, deprived the owners of the use of their property for its duration. But it ignores First English 's requirement that the owners be compensated for a temporary taking.
 
 
 24
 The panel also takes shelter from First English in the Supreme Court's acknowledgment that it did " `not deal with the quite different questions that would arise in the case of normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like which are not before us.' " Tahoe-Sierra, 216 F.3d at 778 n.17 (quoting First English , 482 U.S. at 321). But that language in First English hardly authorizes the panel to ignore the decision altogether. Rather, it recognizes that a temporary taking only occurs when there is in fact a taking. Delays in obtaining a building permit, changes in zoning ordinances, or other temporary restrictions will not require compensation unless they deprive the landowner of all economically beneficial uses of the property for their duration. Here, the three-year prohibition on construction does not compare with the inherent delay in obtaining a permit or the frictional delay in the permitting process. The regulation clearly blocked all construction during the moratorium period.
 
 
 25
 Justice Holmes noted long ago that "a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change." Pennsylvania Coal, 260 U.S. at 416. First English recognized that the costs its decision imposed upon local regulators "necessarily flow from any decision upholding a claim of constitutional right; many of the provisions of the Constitution are designed to limit the flexibility and freedom of governmental authorities, and the Just Compensation Clause of the Fifth Amendment is one of them." First English, 482 U.S. at 321. The panel's desire to ease local governance does not justify approving means that violate rights secured by the Fifth Amendment as authoritatively interpreted by the Supreme Court.
 
 
 
 Notes:
 
 
 *
 The Honorable Henry A. Politz, Senior United States Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designation.
 
 
 [1]
 In fact, there is no clear-cut distinction between a permanent prohibition and a temporary one. Governmental policy is inherently temporary while land is timeless. Even a permanent prohibition can be rescinded and, in the fullness of time, almost certainly will be. The land may retain market value based on speculation that it will someday become usable because the regulation will be revoked. See, e.g., Florida Rock Indus., Inc. v. United States, 791 F.2d 893, 902 (Fed. Cir. 1986) (recognizing that land might have value under a permanent regulation because a buyer could "bet that the prohibition of rock mining, to protect the overlying wetlands, would some day be lifted"); Florida Rock Indus., Inc. v. United States, 8 Cl. Ct. 160, 166 n.6 (1985) ("If passively holding land against the possibility that restrictions on its use will be lifted were deemed a productive economic use, property would never be rendered useless by regulation and there could be no such thing as a regulatory taking.").
 
 
 [2]
 Waiting to see whether a temporary regulation is extended indefinitely will, of course, raise very serious statute of limitations and laches problems. Indeed, in this very case, the panel holds that the statute of limitations bars the property owners' challenge to a regulation that succeeded the temporary moratorium (and continues to prevent them from building homes on their property). See Tahoe-Sierra, 216 F.3d at 789.
 
 
 [3]
 The panel cites a pre-First English decision, Agins v. City of Tiburon, 447 U.S. 255 (1980), as a case that applied the panel's rule against "conceptual severance in the temporal dimension." Tahoe-Sierra , 216 F.3d at 776. But that case is clearly distinguishable. In Agins , the owner sought compensation for a taking that never occurred. The city brought a condemnation proceeding against the owner but subsequently abandoned the suit. The Court rejected the owner's claim that the suit's temporary effect on the value of his property was an action requiring compensation. See Agins , 447 U.S. at 263 n.9. That's quite different from a regulation that deprives an owner of all use of his property for a period of time.