Albert J. KIPPLE, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 10–422C.

United States Court of Federal Claims.

Jan. 12, 2012.

Albert J. Kipple, Davao City, Philippines, pro se plaintiff.

Sarah A. Murray, United States Department of Justice, Civil Division, Washington, D.C., with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Brian Simkin, Assistant Director for defendant.

## OPINION

BRUGGINK, Judge.

The question posed in this case is whether monies plaintiff received to attend college were a grant or a loan. Defendant contends that plaintiff executed a note to repay a loan from the University of St. Thomas, that the loan was assigned to the Department of Education, and that it remained unpaid until the Treasury Department offset a tax refund to plaintiff. Plaintiff, Dr. Albert J. Kipple, acting *pro se*, contends that the monies were a grant and that the tax offset was therefore illegal. Before the court are plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons stated below, we deny plaintiff's motion for summary judgment and grant in part and deny in part defendant's cross-motion for summary judgment.

**1.** The facts are drawn from the parties' proposed findings of fact, responses thereto, and any ad-

## FACTUAL BACKGROUND [1]

In the late 1960s and early 1970s, plaintiff was a student at the University of St. Thomas, a private university in Texas. Plaintiff concedes that he received $1,650 between 1969 and 1972, as reflected in a two page document which appears to be a student loan promissory note. *See* Def.'s Ex. 1. Page one of the instrument begins with the following recitation:

> I, Albert Kipple, hereinafter called the Maker, promise to pay to UNIVERSITY OF ST. THOMAS, ... the sum of such amounts as may from time to time be advanced to me and endorsed in the schedule of advances below, together with all attorneys' fees and other costs and charges necessary for the collection of any amount not paid when due. In the event of a failure to meet a scheduled repayment of any of the installments due on this note, the entire unpaid indebtedness, including interest due and accrued thereon, shall, at the option of the Institution, become immediately due and payable.

Def.'s Ex. 1 at 1. Below that language is the Schedule of Advances in tabular form containing four columns and multiple rows. The columns reflect the number of the disbursement, amount, date, and "Signature of Maker," respectively. The first four rows are completed and reflect disbursement amounts of $150.00, $500.00, $500.00, and $500.00, with the following dates: 12/17/69, 9/24/70, 8/27/71, and 1/18/72. The fourth column contains plaintiff's signature adjacent to each disbursement.

Below the Schedule of Advances on page one, and on page two, the document sets out additional terms in four sections addressing such things as repayment terms. Below this text there is a place for the borrower to list other student loans along with another block for his signature, his address, and the date. The section for other student loans is not filled in, nor does plaintiff's signature appear on page two.

There is no question that the university treated the outstanding balance as a debt. Plaintiff submitted several exhibits attached

missions made in the complaint, as amended, or other filings.

to his motion for summary judgment.[2] Plaintiff attached copies of canceled checks issued by the university to him as payment for teaching classes. The university then applied these checks, totaling $865.00, to reduce the outstanding balance of plaintiff's note. The reverse sides of the checks are not included, so we do not know whether plaintiff endorsed the checks. *See* Pl.'s Ex. at 6. On April 13, 1981, the university's financial aid office sent a letter to plaintiff notifying him that it was seeking to collect on his defaulted student loan. This correspondence noted that the "original loan was [$]1650.00 and you have paid $686.10." *See* Def.'s Ex. 5.[3] The letter admonished plaintiff to repay the remaining sum.

In its proposed findings of fact, defendant asserts that the note was in default. In support, defendant cites a letter attached to plaintiff's motion for summary judgment. This letter is from the Department of Education ("DOE") to plaintiff, asserting default. Defendant also cites its own Exhibit 6, "Debt Management and Collections System Printout," a computer-generated summary of plaintiff's loan and repayments. Plaintiff does not meaningfully challenge the fact of default. Instead, he questions whether the arrangement constituted a loan in the first instance. We deem this not to be a denial of the proposed fact, although we will deal with the underlying legal question of loan versus grant below.

Defendant also proposes as a fact that the outstanding balance of the loan was assigned by the university to DOE on November 6, 1984. In support of this statement defendant points to three exhibits. The first is Exhibit 6, the computer printout. This document consists of virtually no text and thirteen pages of data entries. Although defendant offers the affidavit of Rubio Canlass, a Loan Analyst for the Department of Education,

the affidavit makes no effort to decode the document. It merely authenticates the exhibits attached to Defendant's Proposed Findings of Fact.[4] Defendant also relies on Exhibit 8, which is a DOE checklist for assignments. It is filled in and relates to plaintiff, but it is not, by itself, an assignment. There is a reference to the need for an "exit interview," which is checked, and the form indicates it was "approved." Exhibit 9, on which defendant also relies, is a letter dated October 10, 1984, from the university's financial aid collections officer, Hector Salazar, to the effect that "[n]o exit interview was done and/or able to be done."

As part of his motion papers, plaintiff tendered a DOE Form 533 "Student Loan Assignment Form," which relates to plaintiff. In it, Mr. Salazar certifies on July 1, 1984, that the loan to plaintiff "is in default." This is the document missing from defendant's proposed findings. As plaintiff points out in refusing to agree to the assertion that the note was assigned, however, the Form 533 certification for assignment appears initially to have been rejected by DOE for lack of an exit interview. While Defendant's Exhibit 8 may indeed be circumstantial evidence that the assignment was consummated, the Form 533 itself does not indicate acceptance by DOE. Whether Exhibits 4 and 6 are proof that the transfer was completed we cannot currently determine because, as indicated above, these transcripts of account are far from self-explanatory.

No further payments were credited to plaintiff's account until April 25, 2008, when the Department of the Treasury executed an offset of Dr. Kipple's tax refund in the amount of $1,815.55 and applied it to extinguish the outstanding student loan debt owed to DOE.[5]

2. Because these exhibits are not separately numbered, we refer to them by page number.

3. Apparently the university treated part of the $865 as payment of accumulated interest.

4. In its motion for summary judgment, defendant relies on three other computer printouts, all of which suffer from the same ambiguity as Exhibit 6.

5. We do not rely on Defendant's Proposed Finding of Fact 6 to make this finding. The proposed finding refers to Defendant's Exhibit 6, which, as we indicate above, is indecipherable. More useful is a letter plaintiff has tendered dated April 25, 2008, from Treasury to plaintiff explaining the offset. Pl.'s Ex. at 1.

## PROCEDURAL BACKGROUND

Dr. Kipple filed suit here on July 2, 2010, alleging that the tax offset constituted an unlawful taking in violation of the Fifth Amendment to the United States Constitution. Defendant moved for dismissal under Rule 12(b)(1) of the Rules of the U.S. Court of Federal Claims ("RCFC") on the basis that, because plaintiff challenged the legality of the seizure, the complaint did not state a valid Fifth Amendment Takings claim and thus we lacked jurisdiction. Defendant also moved in the alternative under RCFC 12(b)(6) to dismiss any potential contract claim.

■ We granted in part and denied in part defendant's motion. Because the complaint questioned the validity of the taking, we lacked jurisdiction over it. Order, Jan. 31, 2011; *see Crocker v. United States*, 125 F.3d 1475, 1476 (Fed.Cir.1997). Challenges to the propriety of governmental action under the Due Process Clause or the Administrative Procedures Act, 5 U.S.C. §§ 500–706 (2006), belong in district court. *See Crocker*, 125 F.3d at 1476; *see also James v. Caldera*, 159 F.3d 573, 581 (Fed.Cir.1998). We did not dismiss the complaint in its entirety, however, instead inviting plaintiff to clarify his grounds for recovery.

On March 15, 2011, plaintiff filed an amended complaint. Plaintiff once again alleges only a Fifth Amendment taking, but takes pains not to challenge the validity of the offset. Plaintiff challenges the government's characterization of the account as a loan, however. In a declaration attached to his motion for summary judgment, plaintiff asserts that he was the recipient of a "one time only grant" disbursed to a small number of students by an institute which he asserts was affiliated with the university. Pl.'s Decl. 4, April 8, 2011 (attachment). According to plaintiff, because of the uniqueness of this grant, there was no official pre-printed form available, and the university therefore decided to use the student loan promissory note to disburse the funds. Thus, according to plaintiff, "The account number identified is NOT a past due, legally enforceable debt held by the United States, and the [DOE] is unable to identify any debt to which it could provide an offsetting credit." Am. Compl. ¶ 15.

The amended complaint also alleges a "second Taking" in the amount of $865.00 by the University of St. Thomas. Apparently this has reference to those payments credited by the university to plaintiff's loan account between 1977 and 1978. We have no jurisdiction over claims made against third parties, so we ignore that portion of the amended complaint. Briefing is complete, and we deem oral argument to be unnecessary.

## DISCUSSION

■ Whether we have jurisdiction over a claim is always a necessary and threshold inquiry. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). This court has jurisdiction over takings claims only if the claim does not challenge the validity or legality of the taking. *See Fl. Rock Indus., Inc. v. United States*, 791 F.2d 893, 898 (Fed.Cir.1986) ("The Tucker Act suit in the Claims Court is not, however, available to recover damages for unauthorized acts of government officials."); *see also Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802–03 (Fed.Cir.1993) ("[C]laimant must concede the validity of the government action which is the basis of the taking claim to bring suit under the Tucker Act."). Thus, if plaintiff challenges the validity of the tax offset, we would not have jurisdiction to entertain a Fifth Amendment takings claim seeking compensation for it.

The Treasury Offset Program is designed to collect delinquent debts owed to government agencies. One method the program uses is to reduce tax refunds the government would otherwise pay to the taxpayer-debtor. *See* 31 U.S.C. § 3720A (2006). These funds are then used to offset the delinquent debt. There are procedures which must be followed before an offset may be issued. *See id.; see also* 34 C.F.R. § 30.20 to –.31 (2011) (establishing specific procedures for DOE administrative offsets via tax offset). A necessary prerequisite for a lawful offset is a "past-due, legally enforceable debt." 31 U.S.C. § 3720A(a).

In his amended complaint, plaintiff states that "The account number identified is NOT

a past due, legally enforceable debt held by the United States, and the Department of Education is unable to identify any debt to which it could provide an offsetting credit." Am. Compl. ¶ 15. In plaintiff's motion for summary judgment, he likewise states: "[DOE] has attempted, but failed to prove the existence of [the] debt." Pl.'s Mot. Sum. J. 2. Thus, even though plaintiff states numerous times that he is not "object[ing] to the Takings," his position is that there was no legally enforceable debt to offset. He necessarily therefore contends that the tax offset was unlawful. Without a legally enforceable past-due debt to administratively offset, the tax offset violates the statute, and renders this court without jurisdiction to hear a Fifth Amendment takings claims regarding the offset. As we explain below, however, we believe that we have jurisdiction on other grounds.

■ If, as defendant argues, plaintiff received a loan from the university, the question becomes whether plaintiff was in default, therefore validating the basis for the offset. If plaintiff was not in default, the offset would appear to be improper. If, as plaintiff contends, there was a grant, and not a loan, the offset would also appear to be improper. An improper offset could constitute the basis for a claim of illegal exaction. This court has jurisdiction to entertain illegal exaction claims, except where Congress has expressly vested jurisdiction elsewhere. *See* 28 U.S.C. § 1491(a)(1) (2006); *Crocker,* 125 F.3d at 1477. An illegal exaction "involves money that was 'improperly paid, exacted, or taken from the complainant in contravention of the Constitution, a statute or regulation.'" *Norman v. United States,* 429 F.3d 1081, 1095 (Fed.Cir.2005) (quoting *Eastport S.S. Corp. v. United States,* 372 F.2d 1002, 1007 (Ct.Cl. 1967)). The prototypical illegal exaction claim is "a tax refund suit alleging that taxes have been improperly collected or withheld by the government." *Id.* To invoke Tucker Act jurisdiction over an illegal exaction claim, "a claimant must demonstrate that the statute or provision causing the exaction itself provides, either expressly or by 'necessary

implication,' that 'the remedy for its violation entails a return of money unlawfully exacted.'" *Id.* (quoting *Cyprus Amax Coal Co. v. United States,* 205 F.3d 1369, 1373 (Fed.Cir. 2000)). We hold that a necessary implication of 31 U.S.C. § 3720A(a) is that an illegal exaction would arise if there was no legally enforceable debt. The remedy would be a return of the money. In short, because we construe the complaint generously for a *pro se* plaintiff, we read the amended complaint to also assert a claim for illegal exaction. We thus have jurisdiction.

■ The next inquiry is whether plaintiff has created a triable issue of fact with respect to his contention that the financial arrangement he had with the university was a grant rather than a loan. The recitations in the opening paragraph of the "Promissory Note" contain all of the elements of an enforceable promise to repay. We know the promisor and the promisee, the amounts are spelled out in the schedule of advances, and reference is made to when "scheduled repayments" are to be made, which is explained at the bottom of page one. In sum, all the elements of a promissory note are present. There is nothing within the four corners of the note which can be read to evidence a grant. In addition, defendant proposes as a fact that "The University of St. Thomas received payments from Dr. Kipple in 1977 and 1978 toward the balance of Dr. Kipple's Perkins loan." Def. Prop. Find. No. 2. Plaintiff did not dispute this finding, and it is well supported by a document plaintiff includes among his exhibits, a Feb. 17, 2009 letter to him from Anne Curry of DOE, as well as by Defendant's Exhibit 5, a letter dated April 13, 1981, from the university to plaintiff. It is undisputed, in other words, that the university treated the funds as loaned to plaintiff and it credited payments to the outstanding balance as if it were a debt.[6] The February 17, 2009 letter also recites that "[our] records also show that . . . [plaintiff] stated 'why don't you make the check out to the [National Defense Student

6. Plaintiff also includes a letter dated February 7, 1986, from the university's financial aid officer to DOE indicating that these checks "were applied

as payment on his National Direct Student loan, first to interest due and then to principal." Ex. to Pl.'s Mot. Enlargement 11.

Loans] account of Al Kipple and I won't need to endorse.'"

In support of his assertion that the monies advanced to him were a grant, plaintiff offers an affidavit in which he states that, while he did attend classes at the university and taught classes there, he was also enrolled as a student in a separate entity called the Institute for Storm Research. It was this institute, he contends, which was the source of the alleged loan funds. He explains the absence of any grant documentation as due to the lack of any standard forms: "there were no stock pre-printed forms available to record this disbursement. The registrar's office decided to use a stock form, from another federal program. This produces a document which, although titled as a promissory note, only the disbursement schedule is used and the promissory portion is blank and not executed." Pl.'s Decl. 5.

There are some indications in the record that plaintiff did in fact receive a grant while at the University of St. Thomas, see Pl.'s Ex. at 6, and defendant does not contest the fact that plaintiff received both grants and student loan money to pay for his education. Plaintiff has not, however, offered any documentation for such grants, and we have no reason to believe the monies at issue were traceable to a grant rather than a loan.

It is true that plaintiff has offered a series of emails between him and the university, written in 2009 and 2010, in which he seeks clarification from the university about the Institute of Storm Research and his asserted grants. The response, however, makes no mention of any grants to plaintiff and indicates that the institute was separate from the university. The emails, in short, do not support plaintiff's assertion.[7]

As we explain above, the document in question is plainly a promissory note. Although plaintiff did not sign the second page, we view his signature next to the advances as sufficient to bind him to the entire document. The relevant promises, in any event, are fully contained in the first paragraph above the schedule of advances and his accompanying signatures.

■ Plaintiff is in effect attempting to use extrinsic evidence, not to interpret ambiguous terms within the promissory note, but to allege a wholly separate financial arrangement. Extrinsic evidence may not be used in this fashion. See Coast Fed. Bank, FSB v. United States, 323 F.3d 1035, 1040 (Fed.Cir. 2003) (en banc); Beta Systems, Inc. v. United States, 838 F.2d 1179, 1183 (Fed.Cir.1988) ("The general rule is that extrinsic evidence will not be received to change the terms of a contract that is clear on its face.").

■ Having concluded that plaintiff borrowed money from the university, the question is whether the offset violated the law. That, in turn, raises a question about the assignment of the note to the United States, which plaintiff does not concede. As we recite in the factual background, there is circumstantial evidence to indicate that the note was assigned. Defendant relies in part on transcripts of account as proof. We are unable to decipher them, however. Nor can we apply the "assignment check list" to our analysis without an explanatory affidavit. At this time, therefore, we cannot find that the note was in fact assigned to and accepted by DOE.

There are also gaps in the record before us concerning whether offset procedures were followed. Under 31 U.S.C. § 3720A, there are statutory conditions the creditor-agency must satisfy before notifying the Treasury of the past-due debt. First, the creditor agency, in this case DOE, must notify the debtor that the agency plans to refer the debt for offset. See 31 U.S.C. § 3720A(b)(1). While defendant asserts that numerous offset letters were sent, it does not provide them, and rather cites to the computer printouts without furnishing an accompanying affidavit to decode them. Furthermore, plaintiff, who currently lives in the Philippines, responds to that proposed finding of fact by stating he never received any offset letters and that

---

7. He also includes an email from the Weather Research Center stating, "I found some more information. It looked like it was a grant from the Texas Education Agency, called Scientific Involvement by Occupational Guidance Experiment." We view this as probative of nothing relevant.

they were "mailed [to] an address in the wrong nation." Pl.'s Prop. Fact No. 7.

The offset procedures also require the creditor-agency to provide the debtor at least sixty days to present evidence disputing the debt, and it must then consider any evidence tendered. 31 U.S.C. § 3720A(b)(2)–(3). It is undisputed that plaintiff has contested this debt with DOE in the past, which is evident from a October 18, 2007 letter from DOE to plaintiff. *See* Def.'s Ex. 11. It is unclear, however, whether this challenge was in response to the statutorily required offset notice. Again, without any supporting affidavit or other explanation, the defendant has failed to demonstrate compliance with 31 U.S.C. § 3720A(b)(2) and (3).

The last statutory element for a valid offset is that the creditor-agency must certify that it made reasonable attempts to obtain payment of the debt. 31 U.S.C. § 3720A(b)(5). Defendant proposes no finding with regard to this element, and, while it may be implicit in the computer printout, without any explanation, we are unable to find that this certification was made.

In sum, we lack jurisdiction to consider plaintiff's Fifth Amendment claim. We do, however, construe his amended complaint as alleging an illegal exaction, over which we may exercise jurisdiction. We also find that plaintiff executed a promissory note. We are unable to further resolve the matter because defendant has not supported its assertions, contested by plaintiff, that the United States acquired the note by assignment and followed the offset procedures.

## CONCLUSION

For the reasons stated above, we deny plaintiff's motion for summary judgment and grant in part and deny in part defendant's cross-motion for summary judgment. If defendant can support a renewed motion for summary judgment to address the court's concerns, it is directed to initiate a new round of summary judgment motions on or before February 3, 2012.