Albert J. **KIPPLE,** Plaintiff,

v.

The **UNITED STATES,** Defendant.

No. 10–422C.

United States Court of Federal Claims.

July 16, 2012.

Albert J. Kipple, Davao City, Philippines, pro se plaintiff.

Sarah A. Murray, United States Department of Justice, Civil Division, Washington, D.C., with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Brian Simkin, Assistant Director, for defendant.

## OPINION

BRUGGINK, Judge.

This is a claim for recovery of monies allegedly illegally withheld by offset from a tax refund. The government used the offset process in order to recoup monies it contends were owed after plaintiff defaulted in repayment of student loans. We previously held that plaintiff had executed a promissory note, which was in default. We declined to grant the government's motion for summary judgment, however, because it had not established that the note had been assigned to the Department of Education ("DOE") and that the department had followed all necessary procedures preliminary to offset. *See Kipple v. United States*, 102 Fed.Cl. 773, 774–75 (2012).

Pending are the parties' cross-motions for summary judgment. Defendant asserts that the government accepted assignment of the loan and satisfied all the requirements of 31 U.S.C. § 3720A (2006) before taking plaintiff's money. In his cross-motion, plaintiff asks the court to revisit the issues resolved in our prior ruling and challenges defendant's assertions of assignment and satisfaction of the procedural requirements. The matter is fully briefed. Oral argument is deemed unnecessary. For the reasons set out below, we conclude that there is not a genuine dispute of material fact and that defendant is entitled to summary judgment.

## BACKGROUND

In 1969, plaintiff entered the University of St. Thomas ("UST") where he received four disbursements totaling $1,650 during 1969 to 1972 to pay for his studies.[1] Upon each disbursement, plaintiff signed a corresponding line on a document also recording the date and amount of money for each disbursement. The document, clearly denominated "Promissory Note," contained all the indicia of a loan even though plaintiff did not sign

---

1. A more detailed background for the case may be found in our prior opinion. *See Kipple,* 102 Fed.Cl. at 774–75.

one section at the end of the second page. We previously held that plaintiff had indeed borrowed money from UST. *See Kipple,* 102 Fed.Cl. at 778. DOE computer records clearly indicate that plaintiff defaulted on this loan in 1978 and made no further payments on the account after 1978.

In 1984, UST sought to assign the loan to the DOE. DOE rejected UST's first application for assignment in July 1984 due to a lack of exit interview documentation. After a university official supplied a reason for the missing exit interview documentation, DOE no longer considered the missing exit interview documentation an obstacle to assignment. DOE computer records indicate the loan entered its computer system in November 1984. DOE referred plaintiff's loan to the Treasury Offset Program ("TOP") in 1990 and continued to pursue tax refund offset through 1992. The department made a few collection attempts through 2007, when it authorized a collections agency to seek repayment and resumed seeking tax refund offset.

The current dispute began in 2007 when DOE's collections agent Van Ru Credit Corporation began contacting plaintiff. Plaintiff immediately objected on the ground that the $1,650 disbursed to him at UST did not constitute a loan. He voiced those objections to Van Ru Credit Corporation, the DOE's Customer Care Group, its Office of the Ombudsman, the DOE Default Resolutions Group, his United States senator, and finally to this court through the present lawsuit. Plaintiff eventually moved for summary judgment, and defendant filed a cross-motion for summary judgment.

We construed plaintiff's complaint as seeking recovery for an illegal exaction. Plaintiff, as he has maintained for some years now, argued that the document he had signed, though denominated a "Promissory Note," represented a grant or scholarship. Looking to the four corners of the document and plaintiff's signature affixed to each disbursement of funds, we held that the document was a loan, which plaintiff had the obligation to repay. Plaintiff presently seeks to resurrect the controversy over whether he borrowed money, but he produces no new or persuasive evidence. We also noted in our prior opinion that defendant's proposed findings of fact, supported by letters and computer records, established plaintiff's default. Plaintiff did not meaningfully challenge defendant's proposed findings of fact with respect to default. *See id.* at 775. Plaintiff contends once again that he was not in default, but has not supplied any evidence that raises a meaningful challenge. We will not, therefore, reconsider plaintiff's challenges to the existence of a loan and to his default.

We could not fully resolve the case during the last round of summary judgment motions because there was not sufficient evidence as to whether DOE had accepted assignment and whether it properly followed procedures applicable to offset. Defendant, relying on additional evidence concerning DOE's adherence to TOP procedures, has renewed its motion for summary judgment; plaintiff has cross-moved.

## DISCUSSION

In determining whether DOE engaged in an illegal exaction by improperly offsetting plaintiff's tax refund, we consider the relevant statutes and regulations governing TOP and whether DOE conformed with them. *See Norman v. United States,* 429 F.3d 1081, 1095 (Fed.Cir.2005) ("An 'illegal exaction,' as that term is generally used, involves money that was 'improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'") (citation omitted).

The statute authorizing federal agencies to utilize TOP, 31 U.S.C. 3720A (2006), provides the following:

(a) Any Federal agency that is owed by a person a past-due, legally enforceable debt (including debt administered by a third party acting as an agent for the Federal Government) shall, and any agency subject to section 9 of the Act of May 18, 1933 (16 U.S.C. 831h), owed such a debt may, in accordance with regulations issued pursuant to subsections (b) and (d), notify the Secretary of the Treasury at least once each year of the amount of such debt.

(b) No Federal agency may take action pursuant to subsection (a) with respect to any debt until such agency—

(1) notifies the person incurring such debt that such agency proposes to take action pursuant to such paragraph with respect to such debt;

(2) gives such person at least 60 days to present evidence that all or part of such debt is not past-due or not legally enforceable;

(3) considers any evidence presented by such person and determines that an amount of such debt is past due and legally enforceable;

(4) satisfies such other conditions as the Secretary may prescribe to ensure that the determination made under paragraph (3) with respect to such debt is valid and that the agency has made reasonable efforts (determined on a government-wide basis) to obtain payment of such debt; and

(5) certifies that reasonable efforts have been made by the agency (pursuant to regulations) to obtain payment of such debt.

TOP is thus only authorized with respect to debts owed to the government. In addition, the agency utilizing TOP must notify the debtor and give him an opportunity to present evidence objecting to the legal enforceability or past-due status of the debt. Further, the agency must review any evidence presented to it. Finally, the agency must conform to any regulations specified by the Secretary of the Treasury and certify to the Secretary that "reasonable efforts have been made ... to obtain payment of such debt." *Id.* The Treasury has promulgated regulations governing eligibility for refund offset, some of which further specify the requirements of 31 U.S.C. 3720A(b). *See* 26 C.F.R. § 301.6402–6(b)–(c) (2007); 31 C.F.R. §§ 285.2–285.5 (2007). We will consider each requirement in turn.

I. Assignment to the Department of Education

■ The first requirement is that the agency in question must in fact be "owed by a person a past-due, legally enforceable debt." 31 U.S.C. § 3720A(a). Defendant provided the declaration of Annette Derrick to support its contention that plaintiff's loan had indeed been assigned to DOE. Ms. Derrick, a Management and Program Analyst at the DOE, helps oversee a variety of activities at the Office of Federal Student Aid, including assignments of certain loans to DOE. Def.'s Ex. 1 at 1.[2] She also has access to DOE computer systems related to this dispute. *Id.* In her declaration, Ms. Derrick explains the documents relating to UST's assignment of the loan to DOE. Def.'s Ex. 1 at 4. UST first submitted the loan to DOE on or about July 27, 1984, but DOE rejected assignment due to the lack of exit interview documentation. Def.'s Ex. 1 at 4, 10–11, 15. UST responded with an explanation for its failure to conduct an exit interview and submitted a new application on or around October 10, 1984; DOE rejected this application on October 19, 1984, due to the lack of a manifest of assignment. Def.'s Ex. 1 at 4, 16–17. Finally, UST submitted another assignment form which the DOE approved on or around November 6, 1984, as evidenced by a review checklist marked "approved" with "ADD" written on it. Def.'s Ex. 1 at 4, 18. Ms. Derrick states that a computer printout from the DOE's computer system confirms DOE's acceptance of assignment in November 1984. Def.'s Ex. 1 at 4, 8.

Plaintiff suggests that successful assignment requires generation of a number of other documents. *See, e.g.,* 34 C.F.R. § 674.50 (2011). Defendant responds that not all of these documents are required. *See id.* § 674.50(c). The parties do not provide the years of the relevant regulations in their citations, but it appears both are relying on rules *currently* regulating assignments to the DOE. The regulations have changed, however, since 1984. *See* Perkins Loan Program, 52 Fed. Reg. 45,552 (Nov. 30, 1987) (to be codified at 34 C.F.R. § 674) (operating as part of the replacement of the National Direct Student Loan Program with the Perkins

---

2. We refer throughout to exhibits attached to the defendant's renewed motion for summary judgment and plaintiff's cross-motion for summary judgment.

Loan Program). The regulations in place when the assignment occurred were less specific, allowing assignment as long as "due diligence" was exercised. 34 C.F.R. § 674.8(e) (1984). The due diligence requirements applicable at the time mainly consisted of certain disclosure rules, including conducting an exit interview, as well as procedures in the event no exit interview could be conducted. *See Id.* § 674.42. The exit interview regulation further specified that an "institution must, *if possible,* conduct an interview ..." *Id.* § 674.43(b) (emphasis added). A UST official's letter explaining why the assignment application lacked exit interview documentation specifically stated that one was not "able to be done." Def.'s Ex. 1 at 16. As for other due diligence requirements, both Correction Worksheets note that the DOE determined that all other such requirements were satisfied even in the rejected applications. Def.'s Ex. 1 at 15, 17.

The only evidence to the contrary plaintiff offers are a pair of computer warnings on the printout that confirms assignment. Pl.'s Resp. & Cross–Mot. 16; Pl.'s Ex. 13. These warnings do not call into doubt whether assignment occurred, however. One is a computer-generated warning that the last grace date of the loan, February 30, was invalid. The other warns that the last payment date was later than the default date. We view neither of these warnings as vitiating defendant's evidence that DOE followed assignment procedures in effect in 1984. At most they are harmless errors. There is no genuine issue of material fact as to whether the assignment occurred.

## II. Notice and Opportunity to Present Evidence

The TOP statute requires that a person indebted to a federal agency receive notice and the opportunity to object before that agency seeks to offset the person's tax refund. *See* 31 U.S.C. § 3720A(b)(1)–(2). Implementing regulations provide that an agency must notify or reasonably attempt to notify the debtor, including in such notice a warning that the person must repay within sixty days or have the person's refund off-

set, and they require that the agency give the taxpayer the opportunity to present evidence concerning the legal enforceability or default status of the debt. 26 C.F.R. § 301.6402–6(c)(4)–(5) (2007). DOE regulations specify that the notice must include the default status of the debt, the intent to offset that debt, the opportunity for review, and the date by which such review must be requested. 34 C.F.R. § 30.33(b) (2007).

Plaintiff does not appear to challenge the sufficiency of notice. Pl.'s Resp. & Cross–Mot. 3 ("[B]oth [parties] agree that the Department is in compliance with the [notice provisions], but there appears to be a difference in opinion as to both the date and method of that compliance."). Plaintiff seems to concede that the DOE satisfied its notice requirement after offset pursuant to 34 C.F.R. § 30.28. *Id.* at 26–27. While 34 C.F.R. § 30.28 may allow the DOE to offset without first meeting notice requirements, neither party claims that the standards for justifying post-offset notice have been met. Defendant actually disclaims the notion that the DOE sent late notice in reliance on 34 C.F.R. § 30.28. *See* Def.'s Reply 11. Hence, we must determine whether DOE sent sufficient notice before offset.

■ Defendant has proffered a computer printout and an affidavit interpreting that printout as evidence that DOE sent a notification letter to plaintiff in 2007 prior to the April 2008 offset. Def.'s Ex. 2 at 3–4, 12. Rubio Canlas, a loan analyst for DOE experienced with the computer system that produced the printout, states in his declaration that a line with the code "N 18" indicates that DOE sent a TOP notification letter on the date specified on that line. Def.'s Ex. 2 at 1–2, 12–13. The computer printout includes a line item with N18 on August 18, 2007, meaning that DOE sent a TOP notification letter on that date. Def.'s Ex. 2 at 4, 12. Plaintiff draws attention to the fact that the computer printout has a blank space for his address on that same line, but we attach no significance to that. Canlas in his affidavit explains that the N18 letter was sent to the address on file.[3] Moreover, the lack of a "U"

---

3. It was plaintiff's obligation to maintain a current address on record. *See* Pl.'s Ex. 3 at 2;

code on the N 18 line for August 18, 2007, means that any notification documented on that line did not return to DOE as undeliverable. August 18, 2007, precedes the offset date in April 2008 by more than sixty-five or sixty days, the time requirements under 34 C.F.R. § 30.33 and 31 U.S.C. § 3720A, respectively.

DOE has further provided a sample notification letter typifying what would be sent under an N18 code. Def.'s Ex. 2 at 6–11. Mr. Canlas states that the proffered sample letter would be representative of the kind sent to plaintiff. Def.'s Ex. 2 at 3–4. The sample letter satisfies the various requirements for TOP notification letters mentioned above. For example, it clearly indicates the agency's intent to offset and explains how the recipient can request review. Because plaintiff offers no contrary evidence, we are satisfied that DOE sent a notification letter meeting the statutory and regulatory requirements.

Although DOE satisfied notice requirements by sending a letter to plaintiff's last address on file, defendant emphasizes the likelihood that plaintiff actually received "at least one, if not all of the letters sent by DOE." Def.'s Renewed Mot. Sum. J. 6–7. From the tenor of plaintiff's correspondence with Van Ru Credit Corporation and the DOE, it seems more likely to us that he did not actually receive notice of the offset before it occurred. The likelihood of actual receipt, however, is not the relevant standard. By sending a notification letter to plaintiff at his address on file, the DOE satisfied the notice requirements. Relevant regulations provide that notification or a "reasonable attempt" to notify should be sent to the taxpayer; one possible reasonable attempt would be to send a letter to an address on file at the IRS, and another would be to send to the last address on file at the agency. *See* 26 C.F.R. § 301.6402–6(c)(4), (d)(1) (2007) (stating that the IRS's last address on file would be reasonable); 31 C.F.R. § 285.2(d)(2) (2007) (stating that relying on the agency's last address on file would be reasonable). DOE's manner of notification was sufficient.

Def.'s Ex. 2 at 16.

### III. Review of Evidence Presented and Certification

DOE was obligated to consider any evidence presented by plaintiff in response to the TOP notification letter within at least 60 days. *See* 31 U.S.C. § 3720A(b)(2)–(3). DOE regulations specify exactly what the debtor must do to obtain consideration of evidence in response to a notice; the regulations also specify the period of time during which the debtor may object before the DOE can properly refer the debt to the Treasury. *See* 34 C.F.R. §§ 30.24, 30.33 (2007). Within 20 days after the date of notice, the debtor must file a request for review to DOE, providing all information necessary to identify the particular debt being contested, explaining why the debtor believes the notice contains any inaccuracies, and including documents in support of the debtor's contentions. *See id.*

■ The TOP notification was sent on August 18, 2007. Shortly thereafter, correspondence occurred involving plaintiff, Van Ru Credit Corporation, and DOE. Defendant argues that, by virtue of this correspondence, the agency satisfied its obligation to consider evidence submitted by plaintiff prior to offsetting plaintiff's refund. The correspondence, however, betrays no awareness of the impending tax refund offset. None of the correspondence indicates that plaintiff filed a timely request for review directly to DOE with respect to the offset. Instead, his correspondence was directed to Van Ru Credit Corporation.

Nevertheless, DOE *did* respond to the substance of plaintiff's objections, even though they went through Van Ru Credit Corporation. Def.'s Ex. 2 at 4. We further note that the DOE Office of the Ombudsman offered to explain to plaintiff how to file an untimely request for review of the TOP referral. *See* Pl.'s Ex. 18 at 4. Apparently plaintiff did file such an untimely request for review and DOE considered the submission, although it did not change its position. Pl.'s Ex. 16.

The TOP statute also requires an agency pursuing Treasury offset to certify that "reasonable efforts have been made by the agency (pursuant to regulations) to obtain payment of such debt." 31 U.S.C. § 3720A(b)(5). To demonstrate compliance with this obligation, defendant produced an official certification agreement between DOE and Treasury, which states that,

> [a]ny person who submits Debts via an Add Record or Update Record has or will have delegated authority to certify the Debts on behalf of the head of the U.S. Department of Education.... [T]he person is certifying to [Treasury] ... that to the best of his or her knowledge and belief, the following is true and correct ... The U.S. Department of Education has made reasonable efforts to obtain payment of the Debt.

Def.'s Ex. 2 at 51–53. The DOE thus fulfilled the requirements of 31 U.S.C. § 3720A(b)(5).

With respect to Treasury regulations governing offset, plaintiff contends that DOE failed to comply with procedures implicit in the definition of "enforceable debt." He points out that a "legally enforceable" debt in the TOP context arises when there has been a final agency determination that the amount of the debt is due and no provisions of law bar collection by offset. 31 C.F.R. § 285.5. Plaintiff contends the DOE has failed to make such a final agency determination. We do not agree. The relevant regulations focus the agency's inquiry on whether some legal bar such as an automatic stay in a bankruptcy proceeding precludes collection. The DOE letter of October 18, 2007, clearly reflects that the agency made a determination that plaintiff owed money and that no legal bar prevented collection. *See* Def.'s Ex. 2 at 16. Even if 31 C.F.R. § 285.5 created a separate procedural requirement for TOP, defendant clearly complied with such a requirement.[4]

Defendant has therefore produced meaningful evidence that it fulfilled its obligations under both 31 U.S.C. § 3720A and relevant regulations before referring plaintiff's loan to Treasury for offset. DOE properly accepted assignment of plaintiff's defaulted loan in 1984, and DOE sent plaintiff a notification letter on August 18, 2007. Plaintiff did not file a timely request for review, although DOE did consider both plaintiff's objections to collection attempts and plaintiff's untimely request for review. DOE certified that it had made reasonable attempts to collect the debt and that it had followed other Treasury regulations. Plaintiff has produced no meaningful contrary evidence. Defendant is therefore entitled to summary judgment.

## CONCLUSION

For the reasons stated above, we grant defendant's renewed motion for summary judgment and deny plaintiff's cross-motion for summary judgment. The Clerk shall enter final judgment for defendant and dismiss the complaint with prejudice. No costs.

---

**4.** The Treasury has enacted various other regulations for TOP. *See* 26 C.F.R. § 301.6402–6(b) (2007); 31 C.F.R. §§ 285.2, .5 (2007); *see also* 31 U.S.C. § 3720A(d) (allowing Treasury to regulate referrals); 26 U.S.C. § 7805(a) (2006) (allowing Treasury to regulate anything authorized in the IRC); 26 U.S.C. § 6402 (2006) (authorizing tax refund offsets, which allows Treasury to regulate them under § 7805). These regulations, which further specify the requirements of 31 U.S.C. § 3720A, either have been satisfied or do not apply.